IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIM. NO. JKB-16-0427 |
| IVAN BROWN, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Defendant Ivan Brown is presently serving a sentence of 123 months' imprisonment for possession with intent to distribute heroin and possession of a firearm in furtherance of a drug trafficking crime. (*See* ECF No. 36.) On February 4, 2022, Brown moved for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 43.) For the following reasons, Brown's Motion for Compassionate Release (ECF No. 43) will be DENIED.

Motions for compassionate release are governed by 18 U.S.C. § 3582(c)(1)(A). Under this section, a district court may modify a convicted defendant's sentence when "extraordinary and compelling reasons warrant such a reduction" and the court has "consider[ed] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). A defendant may move for compassionate release under § 3582(c)(1)(A) only after he or she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Brown attaches to his Motion a request for Compassionate Release that he submitted to the Warden of his facility, as well as a response received denying his request for the BOP to file a Motion for Compassionate Release.

1

(*See* ECF No. 43-3.) Because Brown has satisfied the administrative exhaustion requirement, the Court turns to consideration of whether he has also provided evidence establishing the existence of "extraordinary and compelling reasons" for his release. The Court concludes that Brown has not provided evidence that such reasons support his Motion.

## I.    *Extraordinary and Compelling Reasons*

Under 28 U.S.C. § 994(t), the U.S. Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The Commission has stated that "extraordinary and compelling reasons" exist where: (1) a defendant has a terminal or serious medical condition; (2) a defendant with deteriorating health is at least sixty-five years old and has served ten years or 75% of his or her term of imprisonment; (3) certain family circumstances arise in which a defendant must serve as a caregiver for minor children or a partner; or (4) the Bureau of Prisons ("BOP") determines other circumstances create "extraordinary and compelling reasons" for sentence reduction. *See* U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1 (A)–(D) (U.S. Sent'g Comm'n 2021).

This mandate and policy statement, however, predate the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which "remove[d] the Bureau of Prisons from its former role as a gatekeeper over compassionate release motions." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020) (internal quotation marks and citation omitted). Accordingly, the Fourth Circuit has affirmed that "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). Brown argues that three circumstances amount to "extraordinary and compelling" reasons warranting a potential sentence

reduction: (1) his medical conditions in light of the COVID-19 pandemic; (2) the need for him to serve as a caretaker for his ill father; and (3) his rehabilitation while incarcerated.

### A. Brown's Medical Conditions

As an initial matter, Brown argues that his medical conditions, in light of the risks posed by the COVID-19 pandemic, constitute extraordinary and compelling reasons potentially warranting compassionate release. (*See* ECF No. 43 at 6–7); *see also United States v. Lewin*, Crim. No. SAG-15-0198, 2020 WL 3469516, at *3 (D. Md. June 25, 2020) (finding that a defendant can establish his entitlement to compassionate release by demonstrating that he "(1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released").

While Brown indicates that he has obesity, he does not provide medical records that substantiate this claim. Even if Brown had submitted medical records substantiating his obesity, this condition alone would likely not constitute an extraordinary and compelling reason for a potential sentence reduction, even in light of the COVID-19 pandemic. Courts considering similar claims have generally found that the risk of severe illness from COVID-19 posed by obesity alone does not constitute an "extraordinary and compelling reason." Indeed, there are "multiple cases denying compassionate release to defendants with obesity *and* a preexisting condition that [further] increased defendants' risk of severe illness." *United States v. Carter*, Crim. No. PWG-17-0529, 2021 WL 307417, at *3 (D. Md. Jan. 29, 2021) (emphasis added) (collecting cases).

Also cutting against Brown's claim is the availability of "highly effective . . . vaccines[, which] dramatically affect[s] whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release." *United States v. Sanders*, Crim. No. SAG-06-0087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021). The

3

availability and effectiveness of the vaccines means that "[f]or the vast majority of prisoners [it is] impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Collins*, Crim. No. EKD-17-0033, 2021 WL 4991588, at *3 (W.D. Va. Oct. 27, 2021). For these reasons, the Court concludes that Brown has failed to carry his burden of establishing that his medical conditions warrant compassionate release.

### B. Parental Care Needs

In addition to his medical conditions, Brown argues that his need to act as a caregiver for his father—who has serious medical conditions—constitutes an extraordinary and compelling reason for compassionate release. (*See* ECF No. 43 at 2–3.) "Some courts have found extraordinary and compelling grounds for compassionate release if a defendant demonstrates that (1) a parent is incapacitated and (2) the defendant is the only possible caregiver for that parent." *United States v. Allen*, Crim. No. NKM-13-0024, 2021 WL 3025458, at *3 (W.D. Va. July 16, 2021) (citing *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019)). While this Court agrees that an otherwise unmeetable need to care for an incapacitated parents *may* constitute an extraordinary and compelling reason for compassionate release, Brown has not sufficiently established that need exists here.

First, while Brown submits extensive medical records related to his father, these records do not sufficiently establish that his father is incapacitated. Instead, a review of those records establishes that while his father's conditions require adaptation of his habits and home environment, they do not appear to render him incapable of engaging in basic self-care. (*See* ECF No. 43-1 at 2 (listing activity instructions including "spread[ing] out daily tasks throughout the day [and alternating] heavy/difficult tasks with light/easy tasks" as well as modifications to the home environment), 26 (recommending "avoid[ing] the hot hours of the day" and limiting activity

4

"as tolerated").) Courts have generally found that a parent, though ill, is not incapacitated absent a more acute need for assistance. *See United States v. Hicklin*, Crim. No. NKM-16-0002, 2020 WL 7604791, at *2 (W.D. Va. Dec. 11, 2020) (concluding extraordinary and compelling reasons existed where defendant was sole potential caregiver for parent who "needed help on a day to day basis" including "for light housekeeping and getting out of the tub"). *But see United States v. Henriquez*, Crim. No. CCE-15-0225, 2021 WL 5771543, at *3–*4 (M.D.N.C. Dec. 6, 2021) (concluding that need to care for elderly parents who each required "help with all [ ] activities of daily living" was not, alone, an extraordinary and compelling reason for compassionate release).[1] Guided by these prior decisions, the Court concludes that the medical records Brown presents to the Court do not sufficiently establish that his father is incapacitated such that the need to care for him is a potentially extraordinary and compelling reason.

Brown also fails to provide sufficient evidence that he is the *only possible* caregiver for his father. *Allen*, 2021 WL 3025458, at *3. In his Motion, Brown explains that his brother was his father's primary care provider but that he passed away on July 9, 2020. (ECF No. 43 at 2–3.) He further attests that his mother is incapable of caring for his father due to her own health conditions.[2] (*Id.* at 3.) However, this explanation is insufficient to establish that there is no other person available to meet his father's care needs. In particular, Brown provides no explanation as to how his father's care has been provided in the nearly two years since his brother's death and why

---

[1] Brown's filings, which note that he has secured employment and intends to execute a business plan also suggests that, if released, he would be unable to provide this sort of care to his parents even if it were required. (*See* ECF No. 43 at 28.)

[2] It is not clear from Brown's filings whether he is arguing that his mother is incapable of caring for his father or whether her medical conditions are also sufficiently debilitating that the need to care for her constitutes an "extraordinary and compelling reason" potentially warranting compassionate release. (*See* ECF No. 43 at 3 ("Mr. Brown submits that his parents need for a primary care provider are extraordinary and compelling."). *But see id.* ("Brown's mother [ ] cannot provide adequate care for [his father] as she has her own medical conditions.").) Under either interpretation, Brown's filings fail to establish extraordinary and compelling reasons for his compassionate release as they do not establish that either of his parents is incapacitated or that Brown is their only possible caregiver.

5

continuing that situation is now impossible.  Without such further explanation, the Court cannot conclude that there is now such an acute need for Brown to serve as the only possible caregiver to his father that his family circumstances present an extraordinary and compelling reason for compassionate release.

Ultimately, while the Court does not doubt that Brown's assistance in providing for his father's care would be helpful to his family, he has not sufficiently established that (1) his parents are incapacitated or (2) that he is the only person available to provide them with care.  He must do both before this Court can conclude that his family circumstances rise to the level of an extraordinary and compelling reason for compassionate release. *Allen*, 2021 WL 3025458, at *3.

### C. Rehabilitation

Last, Brown submits that his rehabilitation while incarcerated constitutes an extraordinary and compelling reason for a potential sentence reduction.  (ECF No. 43 at 3.)  He explains that, while incarcerated, he has "completed various courses that will be valuable to him upon release" and secured steady employment "working in [ ] Unicor Recycling from September 7, 2017 up until the present time." (*Id.* at 3–4.)  While "rehabilitation alone cannot constitute an extraordinary and compelling reason for release[,]" *see United States v. Davis*, App. No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) (citing 28 U.S.C. § 994(t)), at least one other court has found that rehabilitation can supplement an otherwise insufficient claim for compassionate release based on a defendant's need to provide care to his parents. *See Henriquez*, 2021 WL 5771543, at *5.

In *Henriquez*, the court first concluded that the defendant's family situation alone—where the defendant could have supplemented the inadequate care received by his "elderly and infirm" parents—did not amount to an "extraordinary and compelling reason" for his release. 2021 WL 5771543, at *4.  However, in holistically assessing the defendant's claim, the court ultimately

6

found that the defendant's "model behavior in prison, his unusually deep efforts at successful rehabilitation, his work ethic, the support of a significant number of BoP employees with personal knowledge of his situation [and] his family circumstances" combined to create "extraordinary and compelling reasons" for a potential sentence reduction. *Id.* at *5; *see also United States v. Morris*, Crim. No. MSD-13-0025, 2022 WL 1285183, at *5 (E.D. Va. Apr. 29, 2022) (emphasis added) ("[T]he substantial disparity between the Guideline range that would be applicable if Defendant were sentenced today and the range applied at his original sentencing, Defendant's decade-long period of good behavior while incarcerated, and the non-violent nature of Defendant's drug conspiracy, *when taken together*, constitute an "extraordinary and compelling" reason for a reduced sentence.").

Ultimately, the Court concludes that Brown's claim is distinguishable from the claim in *Henriquez* for two reasons. First, as discussed, Brown has failed to provide sufficient evidence that his parents' conditions are as severe as the defendant's parents in *Henriquez*, who both "need[ed] help with all [ ] activities of daily living." *Henriquez*, 2021 WL 5771543, at *2. Second, while Brown's rehabilitative efforts are encouraging, the Court does not find that they to rise to the level of those evinced by the defendant in *Henriquez*, whose record included "model behavior in prison, [ ] unusually deep efforts at successful rehabilitation [and] the support of a significant number of BoP employees with personal knowledge of his situation." *Id.* at *5. From the present record, the Court cannot conclude that Brown's efforts at rehabilitation are "unusually deep," and those efforts have not been attested to by BOP officials with personal knowledge of Brown's rehabilitation while incarcerated. For these reasons, the Court concludes that Brown's circumstances—taken as a whole—do not rise to the level of "extraordinary and compelling" reasons for compassionate release.

7

## II.      *Section 3553 Factors*

Moreover, even if Brown presented extraordinary and compelling reasons for compassionate release, the Court concludes that a sentence reduction would not be supported by the factors enumerated in 18 U.S.C. § 3553(a).  In Brown's case, an analysis of the § 3553(a) factors remains largely driven by "the nature and circumstances of the offense" as well as "the need for the sentence imposed [ ] to reflect the seriousness of the offense, to promote respect for the law, [ ] to provide just punishment for the offense, [and] to afford adequate deterrence to criminal conduct[.]" *See* 18 U.S.C. § 3553(a)(1)–(2)(B).  Specifically, Brown pleaded guilty to possession with intent to distribute 648.5 grams of heroin as well as possessing a firearm in furtherance of that offense.  PSR ¶¶ 21, 32.  Armed drug distribution, and the violence it often precipitates, is a deeply-rooted problem in this District, requiring a substantial sentence to reflect both the seriousness of the offense and to deter others from engaging in similar crimes.

Brown's 123-month sentence also rests just above the combined 120-month mandatory minimum required by Congress for his offenses of conviction.  *See* 21 U.S.C. § 841(b)(1)(B) (requiring a five-year mandatory minimum for distributing relevant quantity of heroin); 18 U.S.C. § 924(c)(1)(A)(i) (requiring a five-year mandatory minimum to be served consecutively to the underlying offense for possessing a firearm in relation to a drug trafficking crime).  While this Court "does have the authority in granting a motion for compassionate release to sentence a defendant below the mandatory minimum[,]" that authority is generally exercised only in highly unusual circumstances. *See United States v. Jordan*, Crim. No. RDB-11-0094, 2022 WL 214044, at *1 (D. Md. Jan. 25, 2022); *see also United States v. Braxton*, Crim. No. JKB-15-0408, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020) (reducing sentence below mandatory minimum where "highly unusual procedural history" meant that at earlier sentencing proceedings defendant's

8

"proportionate sentence was vacated and a much longer mandatory minimum sentence [was] imposed"). Often, those circumstances exist where a mandatory minimum required an earlier court to impose a sentence far above a sentence that would be imposed today for a similar offense. *Braxton*, 2020 WL 4748536, at *5; *cf. United States v. Webb*, Crim. No. CCB-15-0606, 2021 WL 1840357, at *1 (D. Md. May 7, 2021) (denying reduction below mandatory minimum where "guideline range was only slightly lower than the 120 months the court was required to impose"). That is not the case here, where the Sentencing Guidelines range for Brown's offenses was 111-123 months. *See* PSR ¶ 67.

Further, a sentence at the top end of the Guidelines range is supported by the particular facts of Brown's offense. Although it did not involve violence, Brown admitted he sold heroin that led to the death of another person, JS. PSR ¶ 16. While the Court rejected the Government's view that this raised the base offense level of Brown's distribution offense to 38—which would have led to a dramatic increase in his Guidelines range—these serious consequences still inform the Court's assessment of the § 3553(a) factors. PSR ¶ 22.

Brown argues that this analysis should also be informed by his rehabilitation while in prison, observing that "[a]t the time of sentencing what decision makers cannot measure [is] the capacity for people to change." (ECF No. 43 at 26.) While the Court can and does account for Brown's post-incarceration conduct, it concludes that his rehabilitation—though commendable—is insufficient to warrant a sentence reduction given the other § 3553(a) factors. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors."). Nothing in the record suggests that Brown's sentence near the mandatory minimum was based on a view that he needed significant rehabilitation or training. *See* 18 U.S.C. § 3553(a)(2)(D); (*cf.* ECF No. 43 at 26 (citing to the case

9

of Matthew Charles, who, when originally sentenced, was viewed as "a danger to society [that] should simply be off the streets" but subsequently "never receiv[ed] a disciplinary report while in prison, help[ed] others with their legal pleadings, stud[ied] the [B]ible, [and taught] GED classes").) Rather, Brown's original sentence appears to have been predominantly driven by his serious offense conduct, the mandatory minimums for that conduct, and its tragic consequences. The Court concludes that those same factors continue to support the conclusion that Brown's 123-month sentence is "sufficient, but not greater than necessary, to comply with the purposes [of incarceration]." 18 U.S.C. § 3553(a). As such, even if Brown established extraordinary and compelling reasons for his release, a sentence reduction is not warranted by the § 3553(a) factors as applied to the unique facts of his case.

### III.   Conclusion

For the foregoing reasons, Brown's Motion for Compassionate Release (ECF No. 43) is DENIED.

DATED this **25** day of May, 2022.

BY THE COURT:

James K. Bredar
Chief Judge

10